IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CR-30021-MJR-1 |
| | ) | |
| EMMANUEL D. ABDON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EMMANUEL D. ABDON'S MOTION
FOR DISMISSAL OF INDICTMENT WITH PREJUDICE**

COMES NOW Defendant Emmanuel D. Abdon, by his attorney, Assistant Federal Public Defender Daniel G. Cronin, and moves for dismissal of the Indictment (Doc. 1) with prejudice - as opposed to the Government's oral motion for a mistrial and retrial[1]:

**I.  Introduction**

The defense does not consent to a mistrial and retrial under the present circumstances.  While this Court may declare a mistrial and permit a retrial, its discretion to do so is not unfettered:

> Where a mistrial is declared without the defendant's consent, the defendant may be retried as long as there was "manifest necessity" for the termination of the first trial.  *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1967); *Lovinger* [*v. Circuit Court*], 845 F.2d [739] at 743 [(7th Cir. 1988)].  "Under this standard, the trial judge may declare a mistrial only if a 'scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.'"  Lovinger, 845 F.2d at 745 (quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion)).

United States v. Byrski, et al., 854 F.2d 955, 960 (7th Cir. 1988).

---

[1]If not expressed explicitly, undersigned counsel understood the request for a retrial to be at least implicitly part of the government's request for a mistrial.  The defense would consent to a mistrial without a subsequent retrial.

It is respectfully submitted that there is no "manifest necessity" for a mistrial and retrial, because there is a more suitable means of redressing the factual situation outlined below: The exercise of this Court's supervisory authority to dismiss the Indictment (Doc. 1) with prejudice.[2]

## II.  Reasons for Dismissing the Indictment with Prejudice
### Under this Court's Supervisory Authority

### A.  Factual Basis

The following summary does not purport to be an exhaustive recitation of the facts. Furthermore, the representations in this subsection which are not part of the record are italicized.

This Court determined, towards the end of the third day of trial, that the jury's deliberations involved watching and listening to Mr. Abdon being interviewed by law enforcement.  These recordings were not introduced into evidence at trial, and were not on either party's exhibit list.

Indeed, on the first day of trial, this Court had sustained the defense's objection to testimony summarizing the interview, on the basis of the "Best Evidence Rule" at Rule 1002 of the Federal Rules of Evidence.  As this Court is well aware, the government was instructed that a sufficient foundation would have to be laid for the introduction of the recordings.

There were at least two practical obstacles to doing so on that first afternoon of trial.  First, because she had not intended to attempt to introduce the recordings into evidence, counsel for the government had not brought a laptop computer for playing the recordings to the jury.  More significantly, both parties required additional time to excise the portions of the interview which were subject to orders in limine.

---

[2]Should this Court not exercise its supervisory authority as requested in this Response, then the defense respectfully asks to reserve the right to consent to a mistrial - even if that mistrial is followed by the retrial which this Response seeks to avoid.

During a short recess, undersigned counsel proposed a stipulation to counsel for the government regarding some of the content of the recordings, in lieu of introducing those recordings into evidence. The stipulation consisted of adverse facts - particularly, that Emmanuel Abdon originally told investigators that he had traveled to the Southern District of Illinois, and that he did not realize that A.F. lived in Troy. *Emmanuel Abdon and undersigned counsel entered into this stipulation to avoid what the defense viewed as being even more problematic: The danger that most of the recordings would otherwise be offered into evidence and considered by the jury.*

Based on questioning in open court of the foreperson of the jury, it appears that an even worse scenario has unfolded. Specifically, the jury watched and listened to the recordings (for one, the jury was only able to listen to the audio) without any redaction (although the foreperson explained that they skipped through portions which did not appear to involve any questioning). It appears that at least five hours of recordings have been watched and listened to by the jury. Apparently, watching and listening to the recordings concluded shortly before the foreperson was questioned a few minutes after 4:00 p.m. today (July 25, 2018).

The source of these disks was not the defense, which did not bring them into the courtroom. *Instead, it appears that they were placed on the exhibit table by Homeland Security Investigations Special Agent Dwayne Haferkamp, after being placed in plastic exhibit bags with exhibit stickers numbered as Government Exhibits 85 and 86, respectively.*[3]

---

[3]Undersigned counsel wishes to reiterate that counsel for the government has acted with integrity and good faith throughout these proceedings - as she has in every proceeding in which she and undersigned counsel have been involved.

*The defense will attempt to elaborate on the prejudicial substance of the recordings when Court resumes at 9:00 a.m. on July 26, 2018.  Apart from the actual recordings, though, the prejudice to Emmanuel Abdon by the events so far - and by the specter of a retrial - include:*

① *As indicated above, the recordings were unredacted.*

② *Negative aspects of the recordings were highlighted by a stipulation.*

③ *The defense lost the opportunity to have a transcript prepared and offered along with the recordings, as provided by Seventh Circuit Pattern Jury Instruction 3.14.  The reason why the defense had not considered having the recordings transcribed previously is that the recordings were not on the government's original exhibit list from June 29, 2018 - nor on any of the government's revised exhibit lists.*

④ *The bulk of the jury's deliberations have been devoted to these recordings.*

⑤ *Emmanuel Abdon lost any opportunity to testify in his own behalf in order to explain negative aspects of the recordings (which he could have done safe in the knowledge that this Court had found improper the government's request to introduce evidence against Mr. Abdon under Fed.R.Evid. Rule 609(a)(2)).*

⑥ *Emmanuel Abdon lost any value of surprise from his theory of defense.  On that note, while this Court and experienced counsel for the government may know of  retrials in federal criminal court in which the defense prevailed, undersigned counsel does not know of any after 24 years of employment in the Federal Public Defender's Office.  It is respectfully submitted that having done nothing to contribute to the dilemma before this Court, Mr. Abdon should not have to hope against hope that his will be the first case undersigned counsel knows in which retrial resulted in an acquittal.*

4

### B.  Legal Basis

"[T]his court also has supervisory authority under which we may require trial courts 'to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution.'" Lemons v. Skidmore, et al., 985 F.2d 354, 356 (7th Cir. 1993), quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973).  This authority from the common law has survived the formulation of the Federal Rules of Criminal Procedure:

> The advent of the Criminal Rules did not eliminate a district court's inherent supervisory power as a general matter.  Rule 57(b) recognizes that the rules are not designed to be comprehensive; instead, it says, "when there is no controlling law ... [a] judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district." FED. R. CRIM. P. 57(b). (This rule has remained substantively the same since the original 1944 version.) To be sure, the court is powerless to *contradict* the Rules where they have spoken, just as the court cannot contradict a statute.  *Dietz*, 136 S.Ct. at 1892; *Carlisle v. United States*, 517 U.S. 416, 420-21, 116 S.Ct. 1460, 134 L.Ed.2d 614 (1996); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1998).  But it is Rule 57(b), not Carlisle or Bank of Nova Scotia, that informs us what a court may do when the Rules are silent.

*Carlson, et al., v. United States*, 837 F.3d 753, 762-63 (7th Cir. 2016) (emphasis in original).

Moreover, that supervisory authority does not require proof of wrongdoing by the government.  For example, the following presumption has been applied in federal courts for over half a century:

> Should...voir dire reveal that a prospective juror has become aware through extra-judicial sources that the defendant has a prior criminal record, the established practice in the federal system is that the juror is presumed to be prejudiced and should be excused.  Federal courts began utilizing this presumption after the Supreme Court's decision in *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), wherein the Court reversed a conviction because the jurors had been exposed during trial to newspaper articles concerning the defendant's prior conviction and arrest.

Britz v. Thieret, 940 F.2d 226, 231 (7th Cir. 1991).  But as the Seventh Circuit added:

> The presumption adopted in the federal courts in the wake of *Marshall* has much to recommend it, including the forestallment of the very kind of challenge raised here by Britz.  But - and this is well established - *nothing in the Constitution* compels the trial of all fifty states to adopt the presumption, as its promulgation was based on the Court's federal supervisory authority.

Id. at 231 (emphasis in original; citations omitted).

Indeed, the Seventh Circuit has reiterated that supervisory authority may be appropriate even in instances of recklessness, rather than deliberate misrepresentations.  *See* United States v. Cortina, et al., 630 F.3d 1207, 1214 (7th Cir. 1980) ("Our holding is therefore simple: we will not allow or condone reckless or deliberate misrepresentations made to magistrates.").

### C.  Practical Basis

Although the facts and the law cited above alone justify the relief sought by the defense, that conclusion is bolstered by two practical considerations.

First, this is not a case in which [in the context of illegally seized evidence] Judge Cardozo lamented about "whether the criminal should 'go free because the constable has blundered.'" Scherr v. City of Chicago, 757 F.3d 593, 597 (7th Cir. 2014), quoting People v. Defore, 242 N.Y. 13, 150 N.E. 585, 587 (1926).  For starters, Emmanuel Abdon would not go free anytime soon if his indictment is dismissed with prejudice, since an immigration detainer has been lodged against him.

Secondly, a dismissal with prejudice would not prevent the United States of Attorney for the Southern District of Illinois from proceeding against Emmanuel Abdon in a new criminal case.  As this Court is well aware, the government had intended to seek a superseding indictment against Mr. Abdon, with an additional charge.  *See, e.g.*, Motion for Speedy Trial by U.S.A. as to Emmanuel Abdon (Doc. 49).  Having abandoned that plan and proceeded on the original Indictment (Doc. 1),

no jeopardy has attached to the contemplated charge.  While Mr. Abdon would remain in custody on the immigration detainer, the government would have ample time to seek an indictment on that charge.

### III.  Conclusion

Emmanuel Abdon will suffer if a mistrial is declared and a retrial ordered. This Court's supervisory authority provides a means for dealing with these unfortunate circumstances without making Mr. Abdon pay the price for a problem he did nothing to cause.

Respectfully submitted,

/s/ Daniel G. Cronin
DANIEL G. CRONIN
Assistant Federal Public Defender
650 Missouri Avenue, Room G10A
East St. Louis, Illinois 62201
(618) 482-9050

ATTORNEY FOR DEFENDANT
EMMANUEL ABDON

7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on July 25, 2018, he provided a copy of this document

to:

Angela Scott
Assistant United States Attorney
9 Executive Drive, Suite 300
Fairview Heights, Illinois 62208

via electronic filing with the Clerk of Court using the CM/ECF system.


/s/ Daniel G. Cronin
DANIEL G. CRONIN